[Cite as *St. Clairsville v. Barricklow*, 2026-Ohio-2670.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

CITY OF SAINT CLAIRSVILLE, OHIO,

Plaintiff-Appellee,

v.

EDWARD W. BARRICKLOW,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 26 BE 0011

---

Civil Appeal from the
Belmont County Court, Eastern Division, of Belmont County, Ohio
Case No. 25CVF00310E

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Brittany D. Caraballo, Atty. Amber E. Greenleaf Duber and Atty. Stacie Hackel Snow,* Regional Income Tax Agency, for Plaintiff-Appellee and

Edward W. Barricklow, Defendant-Appellant.

Dated: July 10, 2026

**DICKEY, J.**

{¶1} Appellant, Edward W. Barricklow, acting pro se, appeals the judgment entry of the Belmont County Court, Eastern Division, sustaining the cross-motion for summary judgment of Appellee, City of St. Clairsville, c/o Regional Income Tax Agency ("RITA"), and awarding $3,926.74, plus interest and costs in an action to collect delinquent municipal taxes on oil and gas royalties. Appellant advances four purely legal arguments on appeal. Appellant first asserts the city does not have the authority to tax oil and gas royalties as income because they were generated from real property located outside of St. Clairsville and/or oil and gas royalties constitute intangible income in Ohio. Next, assuming arguendo oil and gas royalties are subject to municipal taxation, Appellant argues the conclusory affidavit offered by the city was insufficient to fulfill the requirements for summary judgment. Finally, he contends the county court was without subject matter jurisdiction because he never received any assessment establishing a definite tax liability allegedly owed for tax years 2021, 2022 or 2023. Finding no reversible error, we affirm the entry of summary judgment in favor of the city.

## FACTS AND PROCEDURAL HISTORY

{¶2} RITA was formed in 1971 to administer the income tax collection of member Ohio municipalities, which includes the city of St. Clairsville at all times relevant to the complaint. Although RITA's Board of Trustees ("Board") is authorized to administer and enforce the income tax laws of each of the participating municipalities, each member Ohio municipality also retains the right to administer and enforce its own income tax laws concurrently with the Board.

{¶3} On April 3, 2025, RITA filed the underlying action on behalf of the city, in Belmont County Court, Western Division, to collect delinquent municipal income tax, as well as associated penalties and interest, allegedly due and owing for tax years 2021, 2022 and 2023 in the amount of $3,926.74. On June 2, 2025, Appellant filed a pro se "Formal Objection of Municipal Taxation of Oil and Gas Income," which was treated by the county court as an answer.

{¶4}    Due to a conflict of interest, the underlying matter was transferred to the Belmont County Court, Eastern Division, on June 11, 2025.  A Notice of Appearance on behalf of Appellant by counsel was filed on July 31, 2025.

{¶5}    At a pretrial conference conducted on August 26, 2025, the county court set a schedule and deadlines.  Discovery was to be completed by September 19, 2025, with a dispositive motion deadline of September 26, 2025, and a settlement conference/hearing on dispositive motions set for October 7, 2025.

{¶6}    The city filed its summary judgment motion on September 26, 2025. The affidavit of Sara Bukszar Linville, a paralegal at RITA, was attached to the motion.  Linville averred RITA had access to and custody of Appellant's tax records, which "indicate[d] some income earned while residing in [the city]," and revealed tax deficiencies in the amounts of $629.73, plus $143.72 and $244.46 in interest and penalties (2021), $1,900, plus $355.31 and $435 in interest and penalties (2022); and $176, plus $16.12 and $26.40 in interest and penalties (2023), for an aggregate amount of $3,926.74.  (Linville Aff. ¶ 6-7).  No documents were attached to the Linville affidavit.

{¶7}    After the county court extended the various deadlines, Appellant filed a motion for summary judgment and to dismiss for lack of subject matter jurisdiction on October 28, 2025.  Attached to Appellant's motions were a blank copy of the city's 2020 Form 37 ("municipal tax form"); a correction notice dated July 25, 2024 for tax year 2020 (the tax years at issue are 2021-2023); the response to a public records request regarding IRS Publication 1075 Compliance (FBI fingerprint background checks); ordinance and statutory authority cited in the motions; RITA's 2015 comprehensive annual financial report; and Ordinance 215-45 (the city's tax ordinance).  The city's 2020 municipal tax form requires the taxpayer to attach a copy of his federal tax return for the same year including all schedules.

{¶8}    Appellant does not dispute that he was a resident of St. Clairsville or that he received oil and gas royalties in the relevant tax years, 2021, 2022 and 2023.  Instead, Appellant argued oil and gas royalties were not taxable as income because the real property that generated the royalties was outside of the city, and oil and gas royalties constitute non-taxable "intangible income," as that term is defined in the Ohio Revised Code and City of St. Clairsville Ordinances ("Ordinances"). He further argued the city

unlawfully accessed Appellant's federal tax returns, and finally, the county court was without subject matter jurisdiction because the city never issued any assessments establishing a definite tax liability for the relevant tax years.

{¶9}   With leave of court, the city filed its opposition brief to Appellant's motions on December 15, 2025.  The city also filed a motion to strike the exhibits attached to Appellant's motions.  Attached to the opposition brief were Appellant's federal Schedule E, captioned "Supplemental Income and Loss," for tax years 2021-2023 and the affidavit of Nicole Sassmannshausen, a paralegal at RITA.

{¶10} Sassmannshausen made averments identical to the averments in the Linville affidavit regarding the amount of Appellant's alleged tax deficiencies. Sassmannshausen added Appellant's municipal tax returns were completed and filed electronically by a tax preparer, including his federal Form 1040 with attached schedules. Appellant's federal Schedule Es, captioned "Supplemental Income and Loss Forms," established Appellant earned oil and gas royalties in the relevant tax years, which the city asserts were not reflected as income on his corresponding municipal returns.

{¶11}  Relevant to this appeal, the Sassmannshausen affidavit reads:

> Records indicate that a legal auditor reviewed [Appellant's] 1040's [sic], Schedule E's [sic], and Returns relative to tax years 2021 and 2022 recognized the error made on behalf of [Appellant] and corrected [Appellant's] Return to accurate [sic] show taxable royalty income while sending a correction notice; and

> The corrections created a balance due and owing to [the city] for tax, penalty, and interest relative to tax year 2021 and 2022[.]

(Sassmannshausen Aff., ¶ 9-10).  The county court ultimately converted the December 15, 2025 trial to a motions hearing. The motions hearing was subsequently continued to January 20, 2026.

{¶12} On January 15, 2026, the city filed a notice and amended affidavit of Sassmannshausen.  The only distinction is that the quoted portion above relating to the issuance of a correction notice is limited to 2021, rather than 2021 and 2022.  Appellant

alleges and the city concedes no assessments were issued for the alleged deficiencies for any of the three tax years.

{¶13} The motions hearing was conducted on January 20, 2026. A copy of the hearing transcript is not in the record. That same day, the county court summarily granted the city's motion for summary judgment. Appellant filed this timely appeal on February 19, 2026.

{¶14} Appellant's pro se brief is structured in a way that prevents his five assignments of error from being compartmentalized into his four arguments. Consequently, the assignments of error are addressed together, but the analysis is divided into the four issues in the body of his appellate brief.

## ANALYSIS

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE [THE CITY] FAILED TO MEET ITS INITIAL BURDEN UNDER CIV.R. 56.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT IMPROPERLY SHIFTED THE BURDEN TO APPELLANT DESPITE [THE CITY'S] FAILURE TO ESTABLISH A LAWFUL MUNICIPAL TAX LIABILITY.**

### ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN GRANTING JUDGMENT ABSENT COMPETENT EVIDENCE ESTABLISHING A LAWFUL TAXABLE AMOUNT OR NET INCOME CALCULATION.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ERRED IN ENTERING JUDGMENT BASED SOLELY ON RESIDENCY WITHOUT PROOF OF A PROPERLY CALCULATED MUNICIPAL TAX LIABILITY.**

**ASSIGNMENT OF ERROR NO. 5**

**THE TRIAL COURT ERRED BY PERMITTING RELIANCE ON CONCLUSORY AFFIDAVITS AND UNSUPPORTED CALCULATIONS IN PLACE OF ADMISSIBLE CIV.R. 56 EVIDENCE.**

**{¶15}** This appeal is from a trial court judgment resolving cross-motions for summary judgment. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Beckett v. Rosza*, 2021-Ohio-4298, ¶ 21 (7th Dist.).

**{¶16}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). "If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial." *Doe v. Skaggs*, 2018-Ohio-5402, ¶ 11 (7th Dist.). In other words, "when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor." *Id.*

Case No. 26 BE 0011

**{¶17}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

**{¶18}** There is no transcript of the motions hearing. It is the Appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decision. *Knapp v. Edwards Laboratorie*s, 61 Ohio St.2d 197, 199 (1980). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Id.*, citing *State v. Skaggs*, 53 Ohio St.2d 162 (1978). Without the filing of a transcript or a statement of the evidence or proceedings under App.R. 9(C) or an agreed statement under App.R. 9(D), we must presume regularity in the county court's proceedings. *Knapp* at 199.

**{¶19}** We turn to Appellant's legal arguments, which we review de novo. *Athens v. McClain*, 2020-Ohio-5146, ¶ 25. First, Appellant argues the city is not authorized to tax oil and gas royalties derived from real property outside of the city's geographic limits. Ohio municipalities derive their income-taxing authority from the Home Rule Amendment, Article XVIII, Sections 3 and 7 of the Ohio Constitution, which grants municipalities the right to exercise all powers of local self-government, expressly including the power of taxation *Thompson v. City of Cincinnati*, 2 Ohio St.2d 292 (1965). This power is subject to restriction by the General Assembly, which codified the framework for municipal income taxation in R.C. Chapter 718.

**{¶20}** Municipal tax is generally imposed on the income of every person residing in the municipal corporation. R.C. 718.01 defines a "resident" as "an individual who is domiciled in the municipal corporation as determined under section 718.012 of the Revised Code." R.C. 718.01(J); Ordinance 175.02 (C)(38). Appellant does not dispute he was a city resident at all times relevant to the complaint.

**{¶21}** Pursuant to R.C. 718.04(A), a municipal corporation may levy a tax on "income" and a "withholding tax" provided it is levied in accordance with R.C. Chapter 718. The ordinance must include "a statement that the tax is an annual tax levied on the income of every person residing in or earning or receiving income in the municipal

corporation . . ." R.C. 718.04(A)(1). R.C. 718.01(B)(1)(a) and Ordinance 175.03(A) define "income" for residents as "all income, salaries, qualifying wages, commissions, and other compensation from whatever source earned or received by the resident," expressly including the resident's distributive share of net profit from pass-through entities and any net profit of the resident.

{¶22} In *Thompson,* 2 Ohio St.2d 292, the Ohio Supreme Court held "a municipality may tax the wages realized within that municipality by a nonresident . . . and may tax the wages of a resident realized from a source outside the municipality." *Id.* at 298. The Court grounded this authority in the home-rule powers of municipal corporations and reasoned that each municipality "has a constitutional right to exercise the powers of local self-government, including the power to tax incomes, and that this power is restricted only by the General Assembly and not by the actions of other municipalities." *Id.* at 295. In *E. Cleveland v. Talley*, 2003-Ohio-753, the Ohio Supreme Court, applying *Thompson*, confirmed a municipality has authority to tax income that a resident taxpayer earned entirely in another municipality. *Id.* at ¶ 14. Based on controlling Ohio Supreme Court precedent, we find Appellant's first argument is meritless.

{¶23} As it is clear that the situs of the real property that generated the resident's income is not a determining factor of whether oil and gas royalties constitute income for municipal tax purposes, Appellant next argues the royalties are intangible income that is exempt from municipal income tax. Oil and gas royalties are subject to both federal and state income tax in Ohio. The United States Code defines "gross income" as "all income from whatever source derived." Further, 26 U.S.C. 61(a)(6) lists royalties as a category of gross income. In R.C. 5747.02(A), Ohio imposes income tax on the "adjusted gross income" of individuals and has defined "adjusted gross income" in R.C. 5747.01(A) as "federal adjusted gross income, as defined and used in the Internal Revenue Code, adjusted as provided in this section."

{¶24} Chapter 175 of the St. Clairsville Codified Ordinances governs income tax in the city. Ordinance 175.02 defines "income" for residents in relevant part as "all income, salaries, qualifying wages, commissions, and other compensation from whatever source earned or received . . ." Ordinance 175.02(C)(16)(a)(i).

**{¶25}** However, "intangible income" constitutes "exempt income" for purposes of the city income tax. Ordinance 175.02(C)(12)(b) (parroting R.C. 718.01(C)(2)(a)). R.C. 718.01(S) and Ordinance 175.02(C)(17) define "intangible income" as:

> [I]ncome of any of the following types: income yield, interest, capital gains, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property including, but not limited to, investments, deposits, money, or credits as those terms are defined in Chapter 5701. of the Revised Code.

**{¶26}** R.C. 5701.06(C) defines "investments" in relevant part as:

> Annuities, royalties, and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature from which income is or may be derived, however evidenced, *excepting*:
>
> (1) Interests in land and rents and royalties *derived* therefrom, other than equitable interests divided into shares evidenced by transferable certificates[.]

(Emphasis added).

**{¶27}** Appellant argues oil and gas royalties constitute other income arising from the ownership, sale, exchange, or other disposition of intangible property, which is exempt from taxation by the city. The city argues oil and gas royalties are royalties derived from and interest in land and subject to municipal taxation.

**{¶28}** The Ohio Supreme Court confirmed in *Chesapeake Exploration, L.L.C. v. Buell*, 2015-Ohio-4551, that "a subterranean mineral estate is realty, capable of ownership and conveyance as such." *Id.* at n. 3. In Ohio, oil and gas royalties that have accrued are considered personal property, while the right to unaccrued royalties is considered real property. *Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-395, ¶ 26 ("There is a recognized difference between royalties that have accrued, which are

personal property, and the right to unaccrued royalties, which is real property"), citing *United States v. Noble*, 237 U.S. 74, 80 (1915).

**{¶29}** R.C. 5739.01(WW) defines "tangible personal property" as "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses. For purposes of this chapter and Chapter 5741. of the Revised Code, 'tangible personal property' includes motor vehicles, electricity, water, gas, steam, and prewritten computer software." Consequently, the extracted minerals are tangible property, so it can be argued oil and gas royalties from extracted minerals constitute income derived from tangible personal property, rather than income derived from an interest in land.

**{¶30}** Nonetheless, we conclude oil and gas royalties are originally derived from real property as Ohio's taxation of royalties turns on whether they are derived from real or personal property. For instance, R.C. 5747.01(C) defines "non-business income" to include royalties from real or tangible personal property. R.C. 5747.20(B) further provides that royalties derived from real property are allocable to Ohio if the real property is physically located in Ohio, whereas royalties derived from tangible personal property are allocable based on the property's physical location during the royalty period. Likewise in the corporate context, net royalties from real property located in Ohio are allocable here, whereas net royalties from tangible personal property are only allocable to Ohio to the extent such property is utilized in Ohio. R.C. 5733.051(A) and (B)(corporate taxation). It would be a difficult if not impossible task to determine where extracted oil and gas are utilized in order to determine their taxability.

**{¶31}** Next, Appellant contends the county court erred in entering summary judgment in favor of the city because the evidence offered in support of the city's summary judgment motion was insufficient. However, Ohio courts have found that a sworn affidavit from a qualified tax administrator, referencing federal tax documents and calculating the municipal tax due, is sufficient to establish tax liability for summary judgment purposes.

**{¶32}** For instance, in *Riverside v. Patino*, 2020-Ohio-4486 (2d Dist.), the Second District affirmed summary judgment for Riverside where a RITA employee submitted a sworn affidavit averring "Patino's Federal Form 1040s and W-2 Wage and Tax Statements relative to the 2015 tax year indicated that Patino resided within Riverside

Case No. 26 BE 0011

and owed $460.05 in municipal income taxes for that year" along with accrued interest and penalties. *Id.* at ¶ 4. Patino argued his residence was on the Wright-Patterson Air Force Base and not subject to municipal taxation by Riverside. However, the Buck Act allows state or local taxing authorities to levy or collect income taxes from persons residing in or carrying on business in federal areas. Moreover, R.C. 718.01(C)(13) similarly authorizes the municipal tax. The Second District held the uncontroverted evidence established Patino resided in Riverside, failed to pay taxes, and owed the stated amount, and the city was entitled to judgment as a matter of law.

{¶33} Similarly, in *E. Cleveland v. Talley*, 2003-Ohio-753 (8th Dist.), the Eighth District affirmed summary judgment where East Cleveland appended an affidavit of the deputy tax administrator attesting to the amount of unpaid taxes due and owing. However, the taxpayer did not dispute the method of calculation by East Cleveland, only the constitutionality of the tax. Significantly, the taxpayers in *Patino* or *Talley* did not argue they did not receive an assessment nor is there any reference to an assessment in either case.

{¶34} Appellant's federal Schedule Es attached to the Sassmannshausen affidavit establish Appellant received oil and gas royalties and the affidavit further establishes Appellant was a resident of the city in the relevant tax years. Appellant does not dispute the foregoing facts. Therefore, we find the evidence offered by the city was sufficient to sustain the city's motion for summary judgment.

{¶35} Turning to Appellant's final argument, we must determine whether the city was required to issue assessments for each of the tax years as a prerequisite to filing this action. The city argues Appellant did not file an opposition brief to the city's motion for summary judgment, so we should reject his argument as being raised for the first time on appeal. However, Appellant's argument regarding the city's failure to issue assessments as a prerequisite to this civil action was advanced in his motion to dismiss for lack of subject matter jurisdiction.

{¶36} Relevant to the current appeal, R.C. 718.11 requires each municipal corporation that imposes an income tax to maintain a local board of tax review and sets forth the procedure for appeals from a tax administrator's assessment or refund claim

Case No. 26 BE 0011

denial, including the notices required when a tax administrator issues an assessment or denies a refund.  R.C. 718.11(C) reads in its entirety:

> Any person who has been issued an assessment may appeal the assessment to the board created pursuant to this section by filing a request with the board. The request shall be in writing, shall specify the reason or reasons why the assessment should be deemed incorrect or unlawful, and shall be filed within sixty days after the taxpayer receives the assessment.

{¶37}  R.C. 718.01(PP)(1) and Ordinance 175.02(C)(2)(a) define an "assessment" as:

> [A] written finding by the tax administrator that a person has underpaid municipal income tax, or owes penalty and interest, or any combination of tax, penalty, or interest, to the municipal corporation that commences the person's time limitation for making an appeal to the local board of tax review pursuant to section 718.11 of the Revised Code, and has "ASSESSMENT" written in all capital letters at the top of such finding.

{¶38}  R.C. 718.01(PP)(2) and Ordinance 175.02(C)(2)(b) expressly provide an "assessment" does not include:

> [A]n informal notice denying a request for refund issued under division (B)(3) of section 718.19 of the Revised Code, a billing statement notifying a taxpayer of current or past-due balances owed to the municipal corporation, a tax administrator's request for additional information, a notification to the taxpayer of mathematical errors, or a tax administrator's other written correspondence to a person or taxpayer that does not meet the criteria prescribed by division (PP)(1) of this section.

{¶39}  In Ohio, there is no statute that addresses whether an assessment is a prerequisite to a civil action by a municipality to collect delinquent income taxes. However, an assessment serves a specific legal purpose in Ohio, that is, it commences the taxpayer's limitations period for filing an appeal with the local board of tax review.

Case No. 26 BE 0011

When a tax administrator issues an assessment regarding an underpayment of municipal income tax, the tax administrator must notify the taxpayer in writing of the taxpayer's right to appeal, the manner of appeal, and the address to which the appeal should be directed. R.C. 718.11(B); Ordinance 175.21(B). Additionally, R.C. 718.11(C) and Ordinance 175.21(C) provide a taxpayer who has been issued an assessment may appeal to the local board of tax review within sixty days after receiving the assessment. None of these procedural rights and obligations are triggered by a correction notice alone.

{¶40} Further, civil actions to recover municipal income taxes and related penalties and interest must be brought within the later of: (1) three years after the tax return, including any valid extension, was due or filed, whichever is later; or (2) one year after the conclusion of any qualifying deferral period, if any (i.e., the period during which an administrative appeal was pending). R.C. 718.12 (A). However, R.C. 718.12(G) imposes an express statutory bar on civil collection suits during two defined periods. Specifically, no civil action to recover municipal income tax or related penalties or interest may be brought during:

(1) the period during which the taxpayer has a right to appeal the imposition of that tax, interest, or penalties; or

(2) the period during which an appeal related to the imposition of that tax, interest, or penalties is pending.

{¶41} Nonetheless, we find an assessment is not a prerequisite to a civil action to collect delinquent taxes. Our conclusion finds its roots in the procedure underlying the Ohio Tax Commissioner's express statutory obligation to issue an assessment as a prerequisite to collection efforts, as the Commissioner may convert the final assessment into a judgment without court intervention.

{¶42} For state income taxes, a formal assessment by the Tax Commissioner is a prerequisite to civil collection. The assessment must include notice of the taxpayer's right to petition for a reassessment or a request a hearing. Once an assessment becomes final and remains unpaid the assessment becomes final and the full amount is immediately due and payable to the Treasurer of State. The statutory collection

mechanism under R.C. 5747.13 allows a final assessment to be filed with the court clerk, who must immediately enter a judgment.

{¶43} For municipal income taxes, there is no express statutory requirement that a municipality must file an assessment prior to filing a civil action to collect delinquent taxes. Therefore, we find municipalities may file a civil action as if recovering any other debt. An assessment by a municipality creates an administrative mechanism that triggers a taxpayer's right to an administrative appeal, but it is not a prerequisite to a civil collection action, where the taxpayer may challenge the alleged tax liability. While there is no explanation for the inequity created when a municipality may foreclose a taxpayer's appeal rights by issuing a correction notice versus an assessment, the taxpayer in both circumstances receives an opportunity to challenge his tax liability albeit in different forums. Consequently, based on the comparison of R.C. 5747.13 and Chapter 718, we find an assessment is not a prerequisite to a civil action to collect municipal income tax.

## CONCLUSION

{¶44} In summary, we find oil and gas royalties are subject to municipal taxation and the evidence in the record is sufficient to establish Appellant's tax liability. We further find an assessment is not a prerequisite to a civil action to collect delinquent municipal taxes. Accordingly, the entry of summary judgment in favor of the city is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Eastern Division, of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**